## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 01 2016, 6:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David M. Payne
Ryan & Payne
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eris Joshua Wallace, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 1, 2016 <br><br> Court of Appeals Case No. 27A05-1512-CR-2272 <br><br> Appeal from the Grant Circuit Court <br><br> The Honorable Mark E. Spitzer, Judge <br><br> Trial Court Cause Nos. 27C01-1412-F6-194 27C01-1407-FC-60 27C01-1104-FB-171 |

**Baker, Judge.**

[1]     Eris Wallace appeals his conviction for Level 6 Felony Possession of Cocaine[1] and the revocation of his probation and suspended sentence. Wallace argues that the trial court erred by admitting certain evidence and that there is insufficient evidence supporting his conviction. Finding no error, and that there was sufficient evidence, we affirm.

## Facts

[2]     On December 12, 2014, at approximately 2:45 a.m., Grant County Sheriff's Deputy Kris Holtzleiter was dispatched to the area of 11th and Gallatin Streets in Marion to help with a Marion Police Department investigation. After arriving in the area, Deputy Holtzleiter observed a black Ford Focus that was a target of the investigation pulling into a parking lot nearby at 10th and Nebraska Streets. He contacted Sergeant Eric Fields and advised him of the vehicle's location. Once Sergeant Fields arrived, they approached the vehicle.

[3]     The two men who had been traveling in the vehicle, Brandon Campbell and Eris Wallace, were walking toward a house. Deputy Holtzleiter ordered them to stop. He approached them and directed Wallace to Sergeant Fields while he patted down Campbell. During the pat down, Deputy Holtzleiter felt a bulletproof vest on Campbell. He placed him in handcuffs and told Sergeant Fields to place Wallace in handcuffs. Wallace and Campbell remained in separate areas near the police cars until police officers took them to the police

---

[1] Ind. Code § 35-48-4-6(a).

station. After the men were placed in custody, Deputy Holtzleiter did a sweep for weapons near the vehicle, but he did not find any.

[4] While Wallace and Campbell were still in custody in the parking lot, Detective Mark Stefanatos arrived. After he parked, he walked across the street to where the Ford Focus was, observed an item of interest, and walked back to his vehicle to get his camera. Wallace started talking to Detective Stefanatos and asking him to come over to talk. Detective Stefanatos approached Wallace to say that he needed to take photographs; while standing there, the detective saw a bag of what appeared to be drugs on the street near the center line markers behind Wallace.

[5] The bag of drugs had not been there the first two times that Detective Stefanatos walked across the street. It was found about six or seven feet from where Wallace was standing. He was the only person besides police officers in that area. None of the six or seven police officers present saw Wallace throw the bag. The bag was a small, clear plastic bag that had been tied off with the top cut off. It looked fresh, without any dirt or tire tracks on it, and in good condition. Detective Stefanatos asked Wallace about the bag of drugs; Wallace said he did not know anything and the bag was not his. A laboratory test later showed that the substance in the bag was cocaine and weighed .7 grams.

[6] On December 23, 2014, the State charged Wallace with Level 6 felony possession of cocaine under lower court cause 27C01-1412-F6-194 (cause 194). Following Wallace's October 26, 2015, jury trial, the jury found him guilty as

charged. On November 20, 2015, the trial court held a sentencing hearing. It sentenced Wallace to two and one-half years of incarceration for cause 194 and revoked his probation and suspended sentence under lower court causes 27C01-1407-FC-60 (cause 60) and 27C01-1104-FB-171 (cause 171). The trial court ordered Wallace to serve in consecutive terms the balance of his suspended sentences, which was 915 days under cause 60 and 718 days under cause 171. Wallace now appeals his conviction and the revocation of his probation and suspended sentence.

# Discussion and Decision

## I. Admission of Evidence

[7] Wallace argues that testimony about Brandon Campbell's bulletproof vest should not have been admitted. A trial court has broad leeway regarding the admission of evidence. *Smith v. State*, 889 N.E.2d 836, 839 (Ind. Ct. App. 2008). We will reverse only if the decision is clearly against the logic and effect of the facts before the trial court. *Figures v. State*, 920 N.E.2d 267, 271 (Ind. Ct. App. 2010).

[8] Indiana Evidence Rule 402 provides that relevant evidence is generally admissible and irrelevant evidence not admissible. Under Indiana Evidence Rule 401, "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

[9] Wallace relies on *Brown v. State*, 747 N.E.2d 66 (Ind. Ct. App. 2001), to support his argument that the testimony of the bulletproof vest should not have been admitted. In *Brown*, after Brown was convicted of carrying a handgun without a license, this Court found that evidence of a shotgun, duct tape, and ski masks found in the car in which Brown was a passenger was not relevant to the issue of Brown's guilt or innocence on the charge of possessing an unlicensed handgun, and that evidence did not prove or disprove any material fact in the case. *Id.* at 68.

[10] We find *Brown* distinguishable. In this case, the testimony about the bulletproof vest established that the officers handcuffed Wallace and Campbell because of concerns of officer safety and that the detention was lawful. Wallace asserts that there was no evidence that he knew Campbell was wearing a bulletproof vest, but whether he had knowledge of it does not change the fact that the officers had a justifiable reason to detain the men, and did in fact detain them, thereby giving Wallace a motive to discard the drugs. The testimony therefore had a tendency to make a fact more or less probable, and the trial court did not err by finding that the evidence was relevant and admissible.

[11] Wallace also argues that even if the evidence was relevant, the trial court should not have admitted it because it was unfairly prejudicial. Under Indiana Evidence Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" When evaluating whether to admit or exclude the evidence, the trial court looks for danger that the jury will substantially overestimate the value of the evidence or

that the evidence will arouse or inflame the jury's passions or sympathies. *Duvall v. State*, 978 N.E.2d 417, 428 (Ind. Ct. App. 2012).

[12] Before trial, Wallace moved for an order in limine. The trial court granted the motion in part, excluding evidence that the officers were looking for the black Ford Focus because of a report of shots fired and evidence of a shell casing from a high-powered rifle on the floorboard of the car, because the danger of unfair prejudice substantially outweighed its probative value. The trial court declined to exclude evidence of the bulletproof vest, however, so that the State could elicit testimony that the officers arrested the two men out of concern for officer safety. Tr. p. 24-25. The testimony about the bulletproof vest was brief and was elicited only to establish the reason for the detention. Tr. p. 32-33. We therefore disagree with Wallace's assertion that the bulletproof vest was evidence that would make the jury "likely tip the scales in favor of a conviction," appellant's br. at 21, because the testimony presented about the vest was short and concise and other, more significant evidence was presented that could persuade the jury to convict him. We find that the probative value of this evidence is not substantially outweighed by any prejudicial effect and that the trial court did not err by admitting it.

## II. Sufficiency of the Evidence

[13] Wallace further argues that there is insufficient evidence supporting his conviction for possession of cocaine. When reviewing a claim of insufficient evidence, we will consider only the evidence and reasonable inferences that

support the conviction. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We will affirm if, based on the evidence and inferences, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). Circumstantial evidence alone is sufficient if inferences may reasonably be drawn that enable the factfinder to find the defendant guilty beyond a reasonable doubt. *Pratt v. State*, 744 N.E.2d 434, 437 (Ind. 2001). To convict Wallace of Level 6 felony possession of cocaine, the State was required to prove beyond a reasonable doubt that he, "without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesse[d] cocaine (pure or adulterated)." Ind. Code § 35-48-4-6(a).

[14] Wallace contends that the evidence is insufficient to support his conviction because no one saw him actually possess or discard the bag of cocaine and it was recovered in a public street after Wallace was placed in handcuffs. In support of his argument, Wallace distinguishes his case from Indiana cases that hold that sufficient evidence was presented where a defendant discarded or disposed of an illegal substance later recovered by police. *See Hayes v. State*, 876 N.E.2d 373 (Ind. Ct. App. 2007) (officer observed defendant placing a closed fist inside a bin and removing an empty hand before recovering cocaine from the same part of the bin); *Hicks v. State*, 609 N.E.2d 1165 (Ind. Ct. App. 1993) (officer saw defendant drop a small brown paper package on the ground that another officer recovered); *Phillips v. State*, 313 N.E.2d 101, 160 Ind. App. 647

(1974) (officers found a packet of heroin on the floor of the rear compartment of their patrol car after defendant had been removed).

[15] In this case, the street where the bag of cocaine was found was blocked off by the officers' cars, and there was no traffic on it. Detective Stefanatos testified that the bag of cocaine was not present on the street during the first two times he walked across the street. Once the bag of cocaine was on the ground, it was "obvious" that it was there. Tr. p. 88. The bag was in good condition without any dirt or tire tracks on it, despite its presence in the middle of a "heavily traveled" street. *Id.* at 100-01. Wallace was the only person other than the officers in the area where the bag of cocaine was recovered. Sergeant Fields testified that he observed Wallace, after being handcuffed, moving his hands around and sticking his hands into his right coat pocket, and that when he asked Wallace what he was doing, Wallace said he was trying to get his cell phone. During trial, Wallace demonstrated his range of movement while wearing handcuffs.

[16] A reasonable fact-finder could infer from this evidence that Wallace actually possessed the cocaine. We find that the evidence is sufficient to sustain the verdict.[2]

---

[2] Wallace also argues that the trial court's revocation of his probation and suspended sentence under lower court causes 60 and 171 should be reversed because there was insufficient evidence to convict him of possession of cocaine under cause 194. Finding sufficient evidence for the possession of cocaine conviction, the trial court certainly did not err by revoking probation in those cases.

The judgment of the trial court is affirmed.

Vaidik, C.J., and Najam, J., concur.